**MARK T., Respondent Below, Appellant,**

v.

**JUDITH T., Petitioner Below, Appellee.**

Family Court of Delaware,
New Castle County.

Submitted May 14, 1981.

Decided May 21, 1981.

Kenneth F. Carmine of Potter & Carmine, P. A., Wilmington, for respondent below, appellant.

Charles K. Keil of Bayard, Brill & Handelman, P. A., Wilmington, for petitioner below, appellee.

Before DUFFY, QUILLEN and HORSEY, JJ.

PER CURIAM:

In this appeal from a Family Court "contempt" order, the defaulting respondent claims that the Court exceeded its authority and abused its discretion in appointing the Clerk of the Court to do what respondent had failed to do and in requiring respondent's profit sharing benefits and equity in the marital home to be used to satisfy child support arrearages and related attorney fees. We disagree and therefore affirm.

In July, 1979, the Court, following divorce of the parties and ancillary proceedings as to both child support and marital property division, ordered, *inter alia*, husband-respondent to pay child support arrearages, as well as future child support, and a stated sum towards petitioner-wife's attorney fees.

In February, 1980, the Court, following hearing, found respondent in contempt for having "categorically refused to comply" with previous Court orders directing him to obtain from his employer all currently available profit sharing account balances and to list for sale forthwith with a realtor the former marital home.

The Court, "under the powers granted to [it] and pursuant to 10 *Del.C.* § 901, et seq., of the general powers of this Court or a Court of equity jurisdiction, and 13 *Del.C.* § 1513(f)", thereupon directed the Clerk of the Court to sign whatever documents were necessary to obtain respondent's compliance

with the Court's prior orders for sale of the real estate and recovery of respondent's available profit sharing benefits.

Respondent contends that the power conferred upon the Court by 13 *Del.C.*, § 1513(f) to appoint the Clerk of the Court to enforce its order as to property division matters does not extend to child support since no such express statutory power is found under 13 *Del.C.*, Ch. 5. Respondent argues that the limiting language of § 1513(f), "necessary to effectuate an order entered under this chapter", bars resort to the Clerk of the Court to secure compliance as to child support matters.

Respondent concedes Family Court's authority under § 1513 to appoint the Clerk of the Court to secure respondent's equity in the house and his profit sharing interest from his employer for payment of his obligations under 13 *Del.C.*, Ch. 15. Therefore, respondent's objection to the Court's use of the balance of the monies raised is misplaced. Since the Court had authority to liquidate such assets under Chapter 15, the Court was clearly then entitled to apply the balance of the funds recovered to the satisfaction of respondent's remaining default judgments for child support and related attorney fees.

 In any event, the Court's direction to its Clerk to do what respondent was ordered to do (and willfully refused to do) was clearly within Family Court's inherent equitable powers relating to support. *See Wife, P. v. Husband, P.*, Del.Ch., 287 A.2d 409 (1972).

Under 10 *Del.C.*, § 925(3),[1] jurisdiction is conferred upon the Family Court to punish for civil and criminal contempt; and under 10 *Del.C.* § 925(15),[2] the Court is empowered to "enter such orders against any party . . . as the principles of equity appear to require." In *Wife, P. v. Husband, P., supra*, (a child support action for legal and equitable relief), those enforcement provisions were construed by Chancellor, now Justice, Duffy to be "presumptively at least, as

broad as those available in Chancery" and as authorizing the use of a sequestration writ after judgment. 287 A.2d at 412 and footnote 3.

In 1974, by 59 *Del.Laws*, c. 567, the jurisdiction and "powers" conferred on Family Court as to support and its enforcement were expressly made coextensive with the jurisdiction previously possessed by the Court of Chancery. Specifically, Family Court was empowered to "[e]nter such other orders as the Court of Chancery heretofore possessed the power to enter, and as the interests of the parties may require. . . ." 13 *Del.C.* § 513(6). *See also* 13 *Del.C.* § 513(4) and (5) conferring on the Family Court the powers of attachment and sequestration to enforce an order of support and related litigation expenses.

Employing the Clerk of the Family Court to achieve respondent's compliance with the Court's orders as to support (as well as property division) and related litigation expenses is clearly within the Family Court's support enforcement powers transferred from Chancery. Otherwise, petitioner's right would be without a remedy, which equity abhors. *See DuPont v. DuPont*, Del. Ch., 79 A.2d 680 (1951), *aff'd*, Del.Supr., 85 A.2d 724 (1951).

 Clearly there is no merit to respondent's argument that the Court abused its discretion in seizing respondent's property interests described in paragraph (3) above to satisfy the judgments entered against respondent under Chapter 5 and Chapter 15. Broad discretion is vested in the Trial Court as to the mode of execution of its contempt powers. The Court was not required to resort to a less efficient mode of execution such as a suggested wage attachment.

Affirmed.

**1.** 10 *Del.C.* § 925(3) was formerly designated as 10 *Del.C.* § 925(c).

**2.** 10 *Del.C.* § 925(15) was formerly designated as 10 *Del.C.* § 925(*o*).